14-3398 People v. Taiwan Jones Good morning. Will both parties that are going to argue please step up and identify yourselves for the record? Good morning, Your Honors. My name is Elena Penick, appearing for Defendant Taiwan Jones. Assistant State's Attorney Noah Montague for the People. All right. Well, good morning to both of you. This matter is here on a petition for re-hearing. Each side will have approximately 15 minutes to present argument. And Mr. Montague, you're going first, aren't you? Isn't this your petition for re-hearing? It is, but I thought our understanding was that the House Counsel would go first. I spoke with the clerk's office, but I was told we'd go first. But you can go with either of you. Well, I don't know why you'd be going first. Because we actually set this for a hearing on only the State's petition for re-hearing. So I think that should be the order of business, actually. Okay. Thank you. Did I say each of you will have 15 minutes? Yes. Okay. All right. Well, good morning. Good morning. May it please the Court, Assistant State's Attorney Noah Montague on behalf of the People on this matter. As Your Honors know, this Court has already ruled on this case and affirmed the Defendant's conviction. This Court also vacated the Defendant's sentence based on the finding of the amendments to the Section 5-130 of the Juvenile Court Act Applied Retroactive We are here today on the People's petition for re-hearing where we are asking that this Court apply the ruling from People v. Jackson, which in a very similar situation to this case found that the amendments to 5-130 did not apply because the Defendant was never within the Juvenile Court Act's jurisdiction under 5-120. In People v. Jackson, it was the same scenario presented as this case in every particular, including the fact that the parties did not raise the 5-120 issue before the Court ruled. The Defendant in Jackson committed armed robbery. The Defendant was 17 years old, and he argued that the amendments to Section 5-130 should apply to him retroactively, but the Court in Jackson found that because 5-120 bars 17-year-olds who commit felonies from the Juvenile Court Act and sets them for criminal court proceedings, that the amendment to 5-130 cannot apply. The parties, in fact, agree that Jackson applies to him. Now, let me ask you, you say the parties, in fact, agree. Agree on what? Agree on the point of the People's Petition for rehearing. Oh, all right. Well, we're going to hear No, not on the other matters. No, but I think we'll wait to hear from opposing counsel. Sure. I'm just saying In the reply to the People's Petition. Yes. Well, I don't know. I'm going to have to ask. Sure. And you know what? I do. I think we should mention that since we're hearing this really for the first time, and there is a suggestion in this response that now the State Appellate Defender is also arguing, which I don't have a problem with, that the equal protection argument should be addressed, which we didn't address before. So I think you should address, in addition to what you want to say, the argument that the equal protection argument should be revisited or should be examined for the first time. Sure. And this was, I think, one of the reasons that counsel and I thought that maybe she would go first, because there isn't a lot of argument on the Jackson Point, at least as far as the briefs have stated, but there is still argument on the equal protection and 5-4.5-105 issues, which I could address now. As for the equal protection claim, the most important thing to see in this is the defendant does not cite any equal protection case that actually rules in a finding, makes a finding of an equal protection violation that is either the same or similar to the defendant's case and what the defendant is here arguing. The argument the defendant is presenting is essentially that there's no rational basis for the 2013 version of Section 5-120 of the Juvenile Court Act because subsequent policy changes have come to light, and those policy changes are evidenced in Eighth Amendment cases like Robert E. Simmons and the Illinois General Assembly's decisions to amend the Juvenile Court Act. But the Illinois Supreme Court has already looked at the issue of whether or not subsequent policy changes can invalidate the Juvenile Court Act differential treatment based on age in the case in People v. Richardson. Didn't they kind of, though, decide that there has to be a starting point? They did. Is that basically, did they ever examine anything really regarding this, whether there was a rational basis for this notion? They did put a, they did examine in terms of rational basis. Well, counsel says that you've misinterpreted their argument. So why don't you tell us how you misinterpreted their argument on the equal protection claim? Well, the difference between Richardson in this case is how and where the comparison group is placed. In Richardson, the defendant was a 17-year-old on one side of an amendment and he was comparing himself to 17-year-olds on the other side of the effective date and saying, look, we're both 17 and you're treating us differently. Here the defendant was a 17-year-old and he's comparing himself to other minors, 16, 15, and younger, being treated, how they are treated differently under the same act. But the point of Richardson in its comparison to this case is how this defendant goes about trying to find that there wasn't a rational basis. Because this defendant is still arguing that there is no rational basis. Well, what is the rational basis? Why don't you tell us? Sure. The rational basis, and there is no question here that rational basis applies, because there is no fundamental right involved and there is no suspect class. And the rational basis of the Juvenile Court Act is seen in the multiple purpose statements within the Juvenile Court Act, which identify two purposes for the act itself. The first is the rehabilitation of minors who have committed offenses so that they can go on and lead productive lives without committing further offenses. But the second is the protection of the public. And in achieving these two dual goals, the way the Juvenile Court Act does this, if you look at the 2013 version, which is what's before the court today, by setting up a scheme where minors are, the Juvenile Court Act applied to them, and as they get older and commit more serious offenses, they are then siphoned off into the criminal court system, so that as they get older and more accountable, and as they commit more and more serious offenses, meaning the public has more of a need of protection, that is where the legislature draws the line. And it's important to see as well that the Juvenile Court Act is not set up for 17 in 2013, that 17 was some benchmark line. The Juvenile Court Act actually sets out in its definitions that 21 was the line between adult and minor. So 18, 19, and 20-year-olds under the Juvenile Court Act were all sent to criminal court. And 13 and under, on that version of the Juvenile Court Act, there's practically no way for them to get to criminal court. So then 13 and 14-year-olds could get to criminal court, but only after a circuit court judge had made a discretionary hearing and had made a number of findings. Then 15 and 16-year-olds could go, had to go to criminal court if they committed severe felonies, but also could have a discretionary hearing to send them to criminal court. And then when you get to 17-year-olds, if they commit any felony, they go to criminal court, but if they committed a misdemeanor, they would stay in juvenile court. So the line goes from young to old and from less severe offenses to more severe offenses, and it is rationally done and logically done to serve the two purposes of the Juvenile Court Act. And the other important thing we'd ask the Court to consider on the rational basis is that rational basis review doesn't ask for courts to look back and say, was this a good policy? Was this a wise policy? Did it actually achieve the goals that it wanted to achieve? That's not the purpose of rational basis. The rational basis is the lowest form of review, and it simply asks, did you have a logical reason related to what you were trying to do? And now, as far as the – Talking about this Jackson case, you know, moving on here. Sure. All right. So in the Jackson case, there's a – which you rely on about this, that the statute doesn't apply because he was 17. I think in Jackson, the 17-year-old was – it was like maybe 2011. I'm not sure it makes any difference. I agree. He was 17 or something in 2011. And the change to 18-year-olds where they were subject to the Juvenile Court Act except for certain felonies, these exceptions, that changed February – or January 1st, I think, 14th. Yes. So he was charged in May, this young man, or he was – the offense occurred in May. So then at the beginning of that year, the policy had changed so that every – anyone under 18 was now subject to the Juvenile Court Act. Is that right? I believe the offense was committed in this case in May of 2013. Right. And then 5-120 was changed January 1st, 2014. Right. But that change was that anyone under 18 was now subject to the Juvenile Court Act except for certain exceptions, like murder, armed robbery, aggravated criminal sexual assault, aggravated battery with a firearm where there's – Correct. So anyway, and then – so still this armed robbery would have kept him where he was. Correct. All right. And then in 16 January, we have the transfer. Well, what happened was it was 15 for all those felonies that you would automatically go to adult court. But then it changed to anyone under 16. So they increased the age. Yes. And, okay, took away – So a 17-year-old that wasn't subject to the act, your position basically is that it really has no application at all. Correct. Okay. Now, in this case that you rely on, there's a statement about the general rule and the exception. Correct. But there's no citation to any authority at all. Are you aware of that? Yes. So what does that mean? Did you cite any authority for the rule and the exception? No. No. No, I just cited the Jackson. All right. So what is that? Give me the citation for when we look at the rule, if the rule doesn't apply, then we never look at the exception. What would be the authority for that? Statutory construction is my – is what I would say that the rule is. Okay. But is there a case that says when we construe a statute, if there's a general rule – Not one that I have on the top of my head. Oh, okay. All right. Well, I was just curious because the opinion doesn't say anything about that, and then in your brief you don't really cite any authority. Not that there isn't authority. I'm just saying that the opinion doesn't refer to it, and then your brief doesn't refer to this concept about when we have the general rule that doesn't apply, then we don't need to look to the exception. So, okay. No, and the people would simply be relying on the plain language of the two statutes in Paul 5-120 and 5-130 and construing them together, it would appear from the plain language that if you are excluded by 5-120, 5-130 simply doesn't come into play. Except that at some point while this case was pending, the general rule actually – the exception actually did apply, didn't it? That's not – Well, the case is pending right now. The case is pending right now. Oh, and so right now that exception would apply to a 17-year-old. I mean, I think what Your Honor is trying to say is if this offense occurred after 2014, this would be – this 5-120 versus 5-130 thing wouldn't come into play. No, what I'm saying is after 2016, any 17-year-old that committed armed robbery would no longer be subject to the exception. The general rule applies now to anyone that's 17. If they commit an armed robbery, they will not go to adult court. Is that right? I believe so. Okay. So I just had some questions about this idea about an exception, because the exception doesn't even apply right now at all to this particular individual. I think we would agree on that. Sure. Okay. If Your Honors would like, I could also address the arguments on 5-4.5-105. Yes. The defendant has argued that this new sentencing law, which also came into effect January 1, 2016, should apply retroactively to him. On this point as well, the defendant has cited no case that shows that this should apply to him or has found that this or a similar statute would apply retroactively. In fact, one interesting point is that the Jackson case, in construing the amendment to Section 5-120, noted that that particular statute included a statement that it only applied to offenses that occurred on or after the effective date. So it's the same language construct which is at issue in 5-4.5-105. But obviously both Hunter and Wilson from different divisions of this court have already ruled and construed upon this. And the particular Hunter Both of those cases are now pending, are they not? That's correct, yes. They've been actually taken, haven't they? Yes. The PLAs, I believe, are pending. Okay. Although, you know, there's several issues in those cases. Yes. At least in Hunter, there's the other section. There's also the 5-130 issue, yes. What about their suggestion that the language that's used in this particular statute isn't really clear in terms of indicating what you say is the legislative intent or prospective application only? And that's one of the points of bringing up how Jackson construed similar language in another statute because it's the same on or after language. And the court there found that it clearly indicated prospective intent. And the people would point this court to the discussion in Hunter because the Hunter court went and found a number of cases that construed on or after in use in Illinois statutes and found that they consistently all found that this indicated prospective intent. So the people would say that on or after has been consistently interpreted under Illinois statutes. What about this notion that this is a procedural statute? In other words, it's not changing the penalty. It's allowing the court to consider sentencing factors, and it allows the court not to impose a firearm enhancement. Isn't that basically procedural? I mean, it's certainly arguably so, but it doesn't come into play in the retroactivity analysis here because under the Landgraf approach, even under the recent case of People v. Howard, what the courts have consistently said is that if you have a statement from the legislature indicating a retroactive or prospective intent, you don't get to Section 4 of the statute on statute. So the procedural versus substantive part of it simply doesn't come into play. Are there any cases that you're aware of where there's the idea that in sentencing or anything, if there's this strong public policy that has come about, that if the case is still on appeal, that the courts should apply the law that's in effect at the time of the appeal? There are cases, and actually either one of Hunter or Wilson or both addressed this because one of the defendants in one of those cases brought up, I believe it's a case, I cannot remember the name of it, but I believe it's from the 1970s, and it was a similar case and they did find a major public policy shift and they did apply it. There were some retroactive cases pending on appeal, but that was distinguished in the case of either Hunter or Wilson. And how would you distinguish it? By the plain language of the statute because in this instance, the legislature has decreed that it must be prospective and that once they do that, it is Illinois law that the courts must follow that absent a constitutional prohibition to doing so. But what is the settled rights that would be impaired here? If he were to be given a sentencing hearing where the trial judge could consider these factors, also the court could decide whether or not to impose a mandatory add-on, which it's apparent the legislature has now decided is a policy that they want to have effectuated. That I do not know, Your Honor. All right. The people's position is that this is a case where the legislature has deemed the policy to be one way and that the courts are required to follow it absent the constitutional prohibition to do so. Would you say that the change occurring on January 14th, I'm sorry, January 2014, that the legislature at that point, and now we're talking over three years ago, over three years ago, they changed the age for individuals subject to the Juvenile Court Act from 17 to 18. Now that's, we're going three years in the past. Then in 2016, they changed a number of things. They changed the age for which he would automatically be transferred for offenses such as murder, aggravated criminal sexual assault, aggravated battery with a firearm. They changed it from, it was 15 before, and now they've said if you're 16, you can automatically go. But anyone under 16 now is not going to go to adult court. They also changed the offenses, and they removed entirely armed robbery from automatic transfers. So, and, I'm sorry, I misspoke, or I didn't add, then we have this new sentencing statute that says that if you're 18 when you commit a crime at the time of sentencing, the court shall consider the following, and then in addition, the court has the power not to impose a mandatory add-on to someone who is under 18. Are those indicators of a strong public policy shift that's been going on for three years now that might indicate that the legislature has this enormous policy shift that should apply to cases that are pending on appeal? Certainly, and, you know, obviously counsel will bring up the Roper v. Simmons and the U.S. Supreme Court cases as well because there has been a change in juvenile law. But it is ultimately the Illinois General Assembly's choice in how this public policy change will be enacted, and it is their choice to have done this, to have done it piecemeal and to have done it with prospective intent. And this sort of brings the conversation back around to the People v. Richardson case where the court said that, you know what, sometimes it is unfair that some people, I believe the court said it's ameliorative changes, so softening changes of the law, that some people end up on one side of it and some people end up on the other. But it's not a violation of rational basis or equal protection, and it's not wrong for the legislature to do this. There is a rational basis and a reason for doing it that way because there's other considerations other than simply the people who get caught up on one side of it versus the other. Well, it's like a 15-year difference, isn't it? It could be, yes. Well, actually, I mean, that's the difference. If the add-on is applied and it's mandatory, okay, that's what the difference is, 15 years. And this is one other point that the defendant has made in arguing for this sentencing statute, is that somehow subsection B is different or could be applied differently than subsection A. But people would simply point out that subsection B, if you look at the language of it, has nothing in it to say to whom or under what circumstances the discretion applies. So for a circuit court judge applying subsection B, you have these mandatory enhancements. So if a 42-year-old commits an offense that would have these enhancements, it's mandatory under the Unified Code of Corrections. But the subsection B grants discretion to the circuit court judge, but it doesn't describe when and where and how and why that discretion can be doled out. The only place that you get the answer to where that discretion comes from is subsection A, which includes the on or after language, which denotes that it's only for offenses committed after the effective date. So the people would ask this Court to reject that because subsection B is completely relying on subsection A and makes no sense without it. For these reasons and the other state in our brief, we'd ask this Court to petition for pre-hearing. We'd ask this Court to grant the petition and rule that the ruling from Jackson applies. Thank you. Ms. Panik. Good morning, Your Honors. Good morning. May it please the Court. I'd like to briefly address our equal protection challenge to the exclusive jurisdiction provision of the Juvenile Court Act before moving on to the retroactivity of the discretionary firearm provision in the Code of Corrections. Could I ask you a question before you begin? Yes. So in your initial opening brief, which you filed with the Court. Yes. You did argue, did you not, that the statute that permits that I don't know the number. It's that withdrew the armed robbery as a mandatory transfer. You argued that that statute was retroactive. Did you not? Correct. Are you actually formally withdrawing the argument you had in your opening brief? I'm not sure how to read your response to the petition for pre-hearing because that's what you argued initially. It was one of your arguments. Yes. I mean, the arguments were in sequence. So first we had an equal protection challenge to 5-120. Yes. Which explicitly said that 17-year-olds are barred from juvenile court under that provision. So I think if you grant relief on that provision, then you have to go on to how Section 5-130 affects jurisdiction in this case. And so we would argue that you would have to grant relief on both issues in order for our client to get a discretionary transfer hearing. Well, if we agreed with your equal protection argument, would there be any reason to consider your other argument that you raised initially? I'm just trying to find out from you if you're actually withdrawing this argument that you made initially that the statute was actually retroactive. No, we're not withdrawing that argument, perhaps clarifying that it's conditioned on relief being granted under the equal protection challenge. The argument being that he should be treated the same as younger juveniles. And if he is, that would mean that he's potentially subject to automatic transfer on the basis of the nature of the offense, which then changed. Well, I thought it was a separate argument. You're tying it in with equal protection, but that's not how you argued it initially. Did you? You said that the statute, if it's, if there's, if there is no equal protection argument that's viable, it was my understanding from reading your opening brief, not the response here to this petition for a hearing, that the statute was retroactive because it had removed armed robbery from the automatic transfers. And that since the case was pending on appeal, that the act itself would apply retroactively so that he would be entitled to a transfer to juvenile court. Yeah. And then. Well, I apologize if the brief wasn't clear. My own perspective on it was that the arguments were interrelated. All right. Well, that's fine. I was just looking for an explanation. But why don't you then tell us why the equal protection argument is something that you think isn't viable here. Well, as I was saying, we would maintain that the relief this court granted on the basis of the retroactivity of 5-130 is still appropriate where Section 5-120 violates the equal protection clause by treating 17-year-olds more harshly than younger juveniles. But we didn't say that in the order, did we? No. We didn't say that based on a violation of any equal protection argument, did we? No, no. I'm suggesting that there's another problem, a constitutional problem this court has yet to address that if you grant relief on that basis, you would need to go on to the retroactivity of 5-130 and ultimately we would ask for the same relief that you did grant. All right. So to be clear, this is not the same issue that was rejected by the Illinois Supreme Court in Richardson. In Richardson, the sole issue is whether the savings clause added to Section 5-120 violated the defendant's equal protection rights. But the purpose of the savings clause is to provide practical guidance as to who's subject to the amendment to do so in a manner that avoids confusion and preserves judicial resources. So in that context, the Illinois Supreme Court said, sure, statutes have to begin somewhere, and that was a practical way to do it. But those same practical considerations have no bearing on the distinction at issue in this case. And what is that distinction? Well, here the legislature made a value judgment that 17-year-olds charged with felonies should be treated as adults no matter what. But that judgment can no longer be considered rational in light of scientific and sociological studies that have finally given rise to a sea change, really, in juvenile law. Miller, Roper, Graham, they teach us that juveniles are a unique and vulnerable group and that they require the careful exercise of discretion when their conduct doesn't conform to the law. So Roper drew that line at 18. Maybe it should be even higher, but certainly 17-year-olds are at 17. Didn't all of those cases address the idea of mandatory sentences? Yes, but the problem here, it comes down to discretion. What this law does is to put 17-year-olds categorically beyond the reach of juvenile courts when felonious conduct is alleged, and that irrationally denies judges the discretion which Miller, Roper, Graham would seem to require to grant young defendants certain protections. But couldn't it be argued that when the legislation prior to 2016 held the line at under 17 that there was a basis for that at the time? That was generally thought of as the age beyond which other individuals shouldn't be treated as adults? No, I mean, I think there's a long-standing history in Illinois and elsewhere that 17-year-olds are minors. When you look at the different rights that are afforded, in my brief I list a few, whether you can get a tattoo or you can join the military, there's all kinds of... Well, what is the thinking then behind the legislature's ability to determine that even now if a person under 18 commits a murder or an aggravated criminal sexual assault or an aggravated battery with a firearm where the person personally discharges the firearm, what is the rational basis for a legislature deciding that certain offenses are, what should we say, so horrible that we're drawing the line on certain 17-year-olds that commit these offenses? How do you respond to that? Well, whether or not I personally think it's rational isn't really an issue, but I think it's certainly more rational to draw the line on the basis of certain types of felonies that are particularly egregious. The problem with Section 5-120 is it's all felonies, and there's just a huge range of felonies in Illinois, not all of which really require bringing down the weight of the law on a teenager. So that's the problem here is it doesn't even distinguish from one severe thing to another like 5-130 does. In your argument, aren't you really relying on things that really aren't in the record in terms of saying that studies have now shown that individuals under a certain age don't have maturity or the level of maturity or they're influenced by so many things that we can now say, if you're under 18, you're one of those people? Yes, but I think by virtue of the case law and juvenile jurisprudence recently and even the wave of statutory changes that have occurred, that this Court could take judicial notice of what has motivated that and even the studies that were cited by the U.S. Supreme Court in some of those cases. What about the sentencing statute? Isn't there an indication in the language that it says on or after the effective date of this act, a person who is under 18 at the time they commit an offense, at sentencing the Court shall consider? How do you contend that that's not an indication of temporal reach, that it's going forward? It's in the present tense. Well, we're really interested in the firearm provision in subsection B. And as counsel noted, that provision is absolutely silent as to who and when that reaches, right? So whereas counsel would argue that the silence means that subsection A fills the void, we would argue that under the recent Howard decision, that silence is filled by a section four of the statute on statutes and that the legislature made a conscious choice to make the firearm provisions have a broader reach, that discretionary act. Do you have any cases, though, that have ever really taken this interpretation that you are posing today, that where you have two provisions in a section, that they aren't to be read together? Well, I don't have any cases. But, you know, what we can do is look to the other amendments that have been made in recent years and see how they're done differently and more explicitly. And I think, like, for example, the raise the age statute in 5-120 was much clearer as far as it not being retroactive. So if the legislature wanted to make A and B tied together, it could have used that language, you know, above or below both paragraphs. But it chose not to do that. And as in Howard, you know, this court isn't at liberty to second guess what the legislature did. If subsection B is silent about who it reaches, then, you know, section four of the statute on statutes is said to fill that void. And that's when you come upon the procedural versus substantive distinction. And I think there's really no good argument to be made here that this amendment is anything other than procedural. Under the new provision, judges have the discretion now not to impose the firearm enhancements. What about paragraph A? Let's just talk about that for one second. Is that language indicative of retroactive intent or prospective only? Well, I don't think it's very well written. But it certainly suggests some attempt to narrow the reach of that provision. It's a little unclear as to whether, you know, the honor after this date, when a person commits, but then the court at sentencing. You know, it's not really clear what the honor after modifies. Also, given the fact that procedural rules can be applied retroactively, it's, you know, it doesn't even, it's not clear as to whether a sentence, a new sentencing hearing wouldn't be required in these circumstances. Really that, you know, if there is a new sentencing hearing, this is what should happen. But both Hunter and Wilson, which counsel cited, are problematic because they don't even deal with the fact that subsection B doesn't have any of that language at all. So, and as your honor noted, they are pending before the Illinois Supreme Court. But I don't know of any case that would not read these sections together. I just, I'm not sure that there's any case that says, well, in A we said this, but in B we didn't say that again. So that doesn't have any effect. I'm not sure that you could find a statute where this interpretation that you're actually suggesting exists. But I do know you have to read, I mean, if there were two different statutes, we still have to read them together. But this is one statute. It's not like several. So you would normally read the provisions together. Yeah. Well, I think it depends on the statute, right? I mean, there's a lot of criminal provisions, sentencing provisions where the subsections operate completely independently, whether or not there are variations on the way an offense could be committed or conditions that support sentencing in a certain manner. I think the legislature could have made this more clear, but the fact is subsection B says nothing about the reach of that provision. And we do have a body of law in Illinois that fills that void. So until the legislature decides to change it, that's what I think this court needs to work with. And Howard is really instructive on that point as far as, you know, barring any constitutional prohibitions, feasibility is the guiding principle when it comes to deciding the reach of procedural amendments. And that comes from Section 4 itself, which says that proceedings thereafter shall conform so far as practicable to the laws in force at the time of such proceeding. Anything further you wish to add? No, I think that's all, Your Honor. All right. So we would ask that you grant either a discretionary transfer hearing or a new sentencing hearing in adult court. Thank you. Thank you. Mr. Montague, brief response? Your Honor, unless the Court had any questions, I think that people would just ask the Court to grant the people's petition. All right. Thank you. Thank you. All right. We will take the case under advisement. It was well-argued, well-briefed. We thank you for your comments today. And we're going to take a brief recess to switch panels for the next case.